Please call the first case. 071921 People v. Christopher McAtee. Good morning, Your Honors. May it please the Court, Counsel. My name is Richard Goldwasser. I represent the defendant, Appellant Christopher McAtee. Along with me in court is co-counsel in this matter, Ralph Medjik. Your Honor, what we have before the courts today is the review of a denial of a justifiable request for a very short continuance in a trial in which my client faced the offense, faced the charge of murder, and ended up with a 70-year term of imprisonment. The basis for his request for, in essence, what was a three-week continuance, was the fact that we had located his brother in Texas. His brother had previously given a statement in which he confessed to the murder of the decedent and exonerated my client, Christopher McAtee. The basis on which the trial court really denied the motion for continuance was the fact that trial counsel was unable to make the representation that he had any knowledge that Frederick McAtee, the witness, the defendant's brother, would actually come to court and testify consistently with the statement he had given previously. Counsel, on page 3 of your brief, where you do the statement of Frederick McAtee, you say that on December 17, 2003, defendant's attorney and private investigator traveled to Eau Claire, Wisconsin to take Mr. McAtee's statement. And that's when Mr. McAtee confessed that he and not the defendant had shot the decedent. And then you say defendant's attorneys had no further contact until October 19, 2003. Did you mean 6? Was that just a typo? 2006. That's a typo, Your Honor. Oh, it's just a typo. It's a typo. Thank you. It makes a big difference. It does. Let me ask you this question regarding contact with the individual. Does it make any – well, let's clear up. When was the post-trial motion resolved? The post-trial motion was resolved, I believe, was April 20th or April – And the trial had ended the year before. In October, correct. We take into consideration the fact that Mr. McAtee never appeared during those 5 or 6 months while the post-trial motion was pending? I don't think so. I'm talking about the witness. I don't think so. I think what we look at is – Do you think that goes to the trial judge's concern about whether Mr. McAtee would ever appear on his own? No. And I don't – I do not. And I don't think the question is whether Mr. McAtee would appear on his own. I think the question is, through the aid of process in Texas or the subpoena power, we could have compelled his appearance. I'm sorry. Did the judge grant you the right to get the – basically a material witness subpoena from the other state? He issued a certificate, Your Honor. And did you pursue it, counsel, to try to get him before Judge Brown before the April 07th final disposition of a case that had been over for maybe 6 months? Your Honor, I was not trial counsel. I can't do this. I'm talking about trial. There's nothing in the record to suggest one way or the other. All I can tell the court is that a certificate of materiality was issued essentially on the eve of trial. All right. And then for a number of months thereafter, Mr. Fred, I think it's McAtee, never showed up or was never brought before Judge Brown, correct? That is correct, Your Honor. And you don't have any idea whether trial counsel attempted to get him in after that certificate was issued? I do not. I do not. So let's say we remand for a new trial. What do you think the odds are that Mr. McAtee, the witness, will appear at a new trial? I think the odds are very high. And why do you say that? My answer, you know, I'm an appellate attorney. I've been practicing for many, many years. I've handled many, many criminal defense appeals. And I understand my argument to the court is based upon the record at trial. My answer to you is to why I think the likelihood of Mr. McAtee appearing at trial is high, is outside the record. And if it would be of any aid to the court, I can inform the court the basis for my answer. Well, let me ask you this. Is there anything in the record that would suggest that the concern expressed by Judge Brown as to the likelihood of Mr. McAtee, the witness, appearing at any trial date had a continuance been granted, was wrong? I think his concern as to whether or not he would appear in December, in November, December. November, right? Yeah. We're speaking of trial date November. I think that is wrong. Actually, I think it's an October date. Well, we had a trial date. The motion was made on October 29th. We indicated that we were looking for a three-week continuance. The court said that, well, actually, the next available trial date is probably sometime after Thanksgiving, which would put it, I think, November 27th was the date the court gave. So what we were really looking at, you know, from beginning to end, was a trial commencing on the court's schedule, about four weeks, five weeks. Counsel, is there anything to indicate that if Mr. McAtee had appeared, Fred McAtee, that he would have given testimony that would have exonerated the defendant? Well, I think this was a question that greatly concerned the trial court. And the attorney appearing before the trial court, I think, quite candidly answered, I'm unable to tell you how this witness will testify. But I think the defendant has the right to call a witness who has given a statement, essentially confessing to the crime, and expect him to testify consistently with that statement. And while we're... Well, it isn't just that, though, is it, Counsel? Because, in fact, you have two statements by this very same witness. Three. Okay. Three statements by this very same witness, and at least two of which are diametrically opposed, one pointing the finger at his brother, the other pointing the finger at himself. How can we say which version he would testify to? Well, I think that's... One was under oath, the other wasn't. I think that's why we have trials here. Well... The defendant has the right to present... I think Justice Hall's question also went to whether or not he would invoke his Fifth Amendment right. Let's say he would choose to invoke his Fifth Amendment right, and the trial judge, in exercising his discretion, says and determines that in a hearing outside the presence of the jury, says that because he's going to invoke his Fifth Amendment right, I see no reason to put him before the jury. Therefore, you're back in the very same position you were in before. And there certainly was a possibility, Your Honor. And so the trial that you say is the defendant's right would be identical to the trial he's already had. But I believe the defendant has the right to actually go through and find out with the case how it unfolded. I don't think we try defendants based upon what we think the testimony is going to be. We try defendants based upon the actual testimony presented at trial. I can assure you that there are many, many cases out there where key witnesses have never been brought to the trial. It's just a prior fact to have their testimony heard. It happens all the time. I understand that. But we had the right, Your Honor, and the right to a fair trial, which includes the opportunity to present witnesses in your behalf. You also have the duty to exercise reasonable diligence, Counsel, isn't that correct? Correct, Your Honor. And so if defense counsel knew as early as December 17, 2003, that Fred McAtee was a potential alibi witness, why would they wait until October 19, 2006, four days prior to trial to, and four days prior to the jury, I'm sorry, was scheduled to be picked, for anybody from the counsel's office to speak with Mr. McAtee? I'd address that in this way. First of all, the record is silent, really, as to what transpired during the last three years. And just as the record is, I can't come up to you now and explain to you what happened in the year 2004, 2005. I don't think that the court could take the inference that nothing was done or that they had been in contact with him. I'm sorry, Counsel, isn't there a statement by the defense counsel in front of the judge when the judge said so? From the time you located him until the time you filed this motion that you haven't really done anything together, and the lawyer said something like that's a fair statement? I believe the colloquy was that this is the first conversation you've had with him since you took the statement. I think that's a different issue that you've done nothing to locate him. I just want to go back a little. If they locate him in 2003, why didn't they attempt to get the material witness subpoena at that time, when they knew where he was in Wisconsin, rather than waiting four days before a jury trial was set to proceed to attempt to get the material witness mechanism in place? Well, at that point, no trial date had been set, Your Honor. At what date? At the time that they took his misdemeanor statement in December of 2003. But you were certainly aware that he was outside the jurisdiction, and presumably with every intention of the inference was that his intention was to remain outside the jurisdiction. Therefore, the only way you can bring him into court is by way of that certificate. Well, I guess we can speculate as to what Mr. McAtee was thinking at the time. I don't think we need to speculate. You find him outside the jurisdiction. Yes. And unless you're speculating that he's going to return into the jurisdiction, therefore the certificate is unnecessary, I think reasonable steps were abundantly clear. What the record establishes is that four days, what we do know is that four days prior to the trial, we locate him in Fort Worth, Texas. And at that point, we ask for just a short continuance, Your Honor, a three-week continuance. The court indicates, well, you know, because of the Thanksgiving holiday, the soonest date I can give you would be November 27th. Then maybe he puts it four or five weeks of a continuance. In view of the short continuance and the materiality of this witness, I think it was a clear error for the judge to deny the request. The judge never got into the seriousness of the charge. He never got into, aside from mentioning, you know, we can get a trial sometime after Thanksgiving, never really certainly didn't rest his denial upon docket management  The court did mention somehow that there were several trial dates set in this case. I went through the docket and the only thing I could find was one motion that there would have been a trial setting and there was one motion by the defendant for a continuance. This is not a case where the defense made repeated motions for continuances, tried to delay the trial, Your Honor. This is a situation where we have a material witness that if called and would provide testimony consistent with a prior recorded statement would exonerate our client. It just simply was not a sufficient basis for the trial court to deny. I'm sorry. Didn't you have a trial date set in June of 2006? I believe that the trial date was a trial date in August. The first trial date I thought was a June date for my recollection. I may be wrong, but. It was marked trial on 7-8. All right. Or maybe it was 8-4. On 7-8 there was an indication that the case was continued to 8-4. It indicated final for trial. And on 8-4 there was a motion of defendant. All right. So on 7, whatever the date was in July that the case was set, for an August date you didn't present the material witness. There was no indication we had any contact with Mr. McAtee at that point or knew where he was. The only indication of any knowledge of Mr. McAtee's whereabouts was on October 19, 2006. Counsel, even if you were to secure this witness, return him to Illinois to testify, and if he was willing to testify, aren't those prior extrajudicial statements hearsay? How could they be admissible? His previous statements. His previous statements? Yes, sir. Isn't that hearsay? We may not need his previous statements, first of all, if he appears to testify consistently with his prior statement. We don't need the other statement. But you wouldn't be able to utilize the previous statement in the event that he inconsistently testified. Isn't that correct? We may be able to use that under the Chamber's case, Your Honor. An extrajudicial statement, essentially confessing to a crime, can be introduced, Your Honor. And at that point, Mr. McAtee would be subject to cross-examination, which would certainly weigh towards the admission of extrajudicial statements. I have one final question. Yes. Regarding Justice Hall brought up Mr. McAtee, the witness possibly serving as an alibi witness, was there an alibi defense in this case? No, there was not. There was not an alibi defense. But, of course, the claim is now that the defendant himself was not present when the shooting occurred, that he was in the vehicle with his girlfriend in some other location. That's Mr. McAtee's statement, yes, Your Honor. Okay. All right. Thank you, Counsel. We'll have a brief rebuttal. Pelley. Good morning. Assistant State's Attorney Amanda Warmington, on behalf of the people. First of all, regarding Issue 1, the trial court properly denied the defendant's motion for a contingency where the defendant had ample opportunity over three years to make diligent attempts to locate this witness. But on the date of his motion, he couldn't meet his burden of showing any evidence of diligence in his attempts to locate Mr. McAtee, any reasonable grounds that he would be available at the next court date, or even a good faith basis that Mr. McAtee would be material or even a witness. The statute provides, as you touched on, that all motions for continuance are addressed to the discretion of the trial court and shall be considered in light of the diligence. And these are motions for continuance for a material witness. And the defendant never met that burden of showing any diligence. As Defense Counsel stated, he stated that the record was silent regarding the three-year attempts. And that's the problem here, is that it was, as the moving party, it was his duty, his job, and his burden to show that he had made efforts. But in both the written motion and throughout the testimony, he never stated the efforts his investigator had made to attempt to locate him in Wisconsin or in Texas. He never stated any phone calls. Doesn't justice demand that a witness who could possibly exonerate the defendant, that who, you know, under a prior taped statement, you know, says that he was a shooter, doesn't justice demand that that case be continued and that witness be allowed to be called and examined? If the defendant has met his burden in showing that that person would be a material witness and that he had exercised diligence to get him. So you doubt that he would be a material witness? I'm sure that he may have been a material witness, but I do doubt that he would have been a witness and shown up in court on the date that the counsel was saying, because he wasn't able to provide anything. In fact, he said, I don't think he'll show up voluntarily, and if he shows up, I'll have no idea what he says. And if he pleads the fifth, he's not a witness. He's not testifying. He's unavailable to the court. But isn't all of that just speculation when they could have found out by a simple delay of three weeks? Well, the problem is that the motion was based on speculation. And justice doesn't demand that a case gets continued for three years plus another couple weeks plus another month or however long it would have been based on pure speculation. And that's what defense counsel is offering. And that doesn't – the statute provides that in light of the diligence shown by defense counsel, a continuance may be granted. But it goes back to the – No, not at all, Your Honor. Then what are you saying? The case gets continued for three years and then three more. And I thought that was your immediate prior statement. No, I'm saying that on the day that defendant made his motion to request a continuance to procure a material witness, he was not able to meet his burden. And so we're looking at that day that was set to go to trial and four days from then. And on that day, he could not meet his burden in light of the diligence. And again, the statute provides that it's an abuse of discretion standard. And here, the trial court made an extensive record over 20 pages long stating exactly why he was denying the motion. He then again reconsidered the motion and made another lengthy record saying why he was again denying the motion to reconsider. And so this isn't a Walker case. This isn't a case where the trial court mechanically denies it or reflexively denies it are the words that the court used in Walker. This isn't one of those cases. This is one where the court considered all the factors. He questioned defense counsel. He begged defense counsel, give me some sort of good faith basis that you can show that this guy will come into court, will testify, and that meets the first problem of being a witness. And two, what attempts have you made? And defense counsel didn't provide any. And in light of that, the judge did not abuse his discretion at all in denying defendant's motion. Furthermore, it's defendant's burden right now to show that he was prejudiced. And as you stated earlier, in the record, there's no evidence at all that he ever requested for a continuance again. He never achieved this witness's, he was never able to procure this witness's attendance. And there were six dates between the trial, between the end of the trial and the post-trial motion six months later. And in those six dates, the issue was never raised again. And in the post-trial motion, it was raised that there may have been, that, you know, there was a denial of the continuance and that that was raised as an issue. However, there was no affidavit, there was no suggestion that Mr. McAtee was ever able to be located. And that goes to the prejudice prong. Furthermore, even if the witness, even if Mr. McAtee had shown up, first of all, in Illinois, and then shown up in court, he could have done one of three things. He could have pled the fifth and been unavailable as a witness, unavailable for cross, and, you know, then not been a witness at all. He could have stated, I did it, and not the defendant. And then the prior inconsistent statements, the grand jury and the handwritten statement, both sworn statements, would have come in and the grand jury would have come in as substantive evidence and impeachment. Plus, those statements were corroborated by numerous other eyewitnesses and the lineups and everything else. The third thing he could have done is the witness could have taken the stand and said, defendant did it. And besides being, you know, one of the worst defense witnesses ever, if he says defendant did it, the tape would have come in as impeachment, but it has that critical evidentiary weakness. It was an unsworn statement. It would not have come in as substantive evidence, so it would have been a wash for defense counsel. And then with the corroboration and all the other testimony, it would have been stuck with the same trial that was already had. Touching on the actual statement under Chambers, this statement was an admissible hearsay without any indiction of reliability. It was made to defense counsel and investigator. There was no opportunity for cross-examination. There was no corroboration by any sort of evidence that Fred McAtee was the shooter. Instead, everything pointed to you. The whole argument is could have, could have, could have, would have, should have, might have. It could have all been resolved had the court allowed those three weeks delay and that witness to come in and testify or not. I mean, it's all speculation. The point is, is that on the date of, on the date before trial, four days before trial. Four days prior to jury selection. Right. Four days prior to jury selection, defense counsel made the motion for a continuance. And when it was his burden to show diligence and to show material witness, the judge properly denied it because he wasn't able to meet that burden. It's not an automatic, if you say a witness will come in, then we'll grant a continuance. It's up to the discretion of the trial court and it's up to the, in light of the diligence shown by defense. And they didn't show any diligence. They never showed that they had attempted to contact this witness. They never showed any sort of expectation that Mr. McAtee would show up in court. Instead, they stated he probably won't voluntarily come. I have no idea if he will or not. And he stated he'll show up, he may be in Illinois two weeks from now. That's not saying that he's going to come in and be a witness. And that's not saying that over the course of three years, you attempted to get this witness in before. And so the, it all goes back to that it's defendant's motion. And it's defendant's burden. And he didn't meet his burden in this case. And the judge analyzed it and reviewed numerous factors and probably used his discretion in denying the continuance. Regarding the Chambers, regarding the Chambers case, if this statement was, as I stated, inadmissible hearsay. There was no reason that it should come in. There was no indicia of reliability whatsoever. And the court probably denied defendant's motion in limine to admit this statement. And furthermore, even if it was error, as I stated before, it's an evidentiary standard and it's an abusive discretion standard. The judge, again, weighed numerous factors, looked at numerous cases. What about that first Chamber factor, counsel? The spontaneousness. That Fred McAtee's statement, it really was not spontaneously made to a close acquaintance shortly after the crime occurred. It was made, in fact, to defense counsel's former co-counsel and an investigator six months after the crime occurred. So it did not meet that first Chamber's factor in terms of the spontaneity? That's correct, in terms of the spontaneity and to the close acquaintance. And the defendant concedes that in his brief. He states that, yes, it was made to defense investigator and defense counsel and does not meet that prong. In regards to the second prong, the defendant also concedes that there was no opportunity to cross-examine. This was a witness that was saying something different than he had ever said before. And the prosecution, the people had no opportunity to cross-examine him. Third, it wasn't corroborated by independent evidence. The evidence that defense attempted to state that was corroboration was evidence that the people never denied. We have continually stated that Fred McAtee was present on the scene. However, he was not the shooter. And there was no independent corroboration that it was Fred McAtee who was the shooter. Well, what about that third factor, Chamber's factor? It does, the statement does meet the third factor. Isn't that correct? He's self-incriminating? Yes, ma'am. I believe it could be self-incriminating. However, looking at the other reliability, he doesn't, he's not walking into law enforcement and saying, I did it. He's out of the jurisdiction. He's, there's, as defense counsel stated on the record, there's no, there's been a warrant out for his arrest in Illinois on an unrelated case, and there's, he's never come in Illinois. He's certainly against the declarant's self-interest. I'm sorry? Certainly against the declarant's self-interest. It could be. However, he kind of minimizes his involvement in making a sort of self-defense argument, and he states that, I mean, he has the ability to remain outside the court's jurisdiction and his interest in maintaining his liberty has not been endangered because he's never come in Illinois. No one's been able to find him. And so, yes, it could be a very, it could be a statement against penal interest, but I think that on its face, it's kind of, I mean, it's not completely one way or the other. And I think that it goes to also is that he's not making this, he's not coming in and making this statement to anyone in Illinois, anyone that has any ability to move on this statement, any sort of law enforcement, prosecution, anything. And so I think that it's not necessarily a definite against his interest. Based on the, based on my brief and all the foregoing reasons, we ask that you affirm defendant's conviction because the court properly denied defendant's motion for continuance in the admission of this statement. Rebuttal? I'd like to address first the issue that Mr. McAtee made this statement outside of the court. In the case of Illinois, there's no requirement for a declaration against penal interest that the statement be made in the state in which the trial is ongoing. Certainly, this is. Let me ask you this question, Mr. Goldwasser. The request was for a three-week continuance. The request was made four days prior to jury selection. Now, it's a simple matter to travel from states by airplane and do it in a day. Any suggestion given why four days weren't sufficient to get Mr. McAtee, the witness, present four days later, why three weeks were really necessary when he could have done it in a day? Well, I don't think we could have served the process in a day. So you were relying on that certificate as opposed to his willingness to come in and reaffirm his statement that he gave in Wisconsin? Yes, and I think the statements made during the colloquy were, well, we're not going to rely on him to voluntarily come in. Or if it wasn't quite that explicit, it was certainly the underlying idea was we need this materiality certificate because we want to compel his attendance. Was the process of pursuing the materiality certificate given any kind of timeframe? I mean, what the process is. We take the certificate, we present it to law enforcement in Texas, and it takes whatever, two, three, five days a week to get it processed. Was that ever explained to anyone in terms of why three weeks were necessary? No. No, it wasn't, Your Honor. I thought that the testimony or the statement before the judge was that the alleged shooter said, you know, I'll be back in the state in two or three weeks. I thought that was the explanation that was given to the trial judge as opposed to even pursuing the material witness. There was a statement from counsels saying that Mr. McAtee indicated that he would be in Illinois, I think about November 14th was the precise date. But that doesn't negate the request to obtain a certificate of materiality. As I said, you know, the record doesn't speak to exactly how many days or a week or two weeks does it take to actually affect this process, but it seems to me a three-week process is pretty reasonable and sounds right just from what we know about processing subpoenas and the like. The state acknowledged Mr. McAtee, Fred McAtee, was a fugitive. There was a warrant out for him. And the state actually had been looking for him as well. For how long had the state been looking for him? Because they, according to what I've read here, and I don't mean you when I say you, but the defense got a statement in December of 2003 and didn't give it to the state until August or September of 2005. So had it for almost two years before they ever tendered the statement to the state to let the state know that Mr. McAtee had now recanted his written and grand jury testimony and was now saying he was the shooter. Yeah. I think up until that time the defense was proceeding on the basis of holding the state to their proof. Once it became clear, and I believe, and again, I don't want to be speculating, but I can tell you that once Mr. McAtee's appearance, okay. You didn't answer the question that I asked you earlier. Now I forgot because you started talking about something else. I apologize. Just go on. The statement is not needed necessarily if Mr. McAtee is going to appear at trial. If he appears at trial and he testifies consistently with what he had previously told the investigator, then the statement never even comes into play. Let me ask you this question regarding the reliability of the statement taken of Mr. McAtee in Wisconsin. Does it say anything about the reliability from the viewpoint of defense counsel because or based on their failure to tender it for almost three years? If it had been a really reliable statement, you would think that defense counsel would be running into the office of the state's attorney with this exculpatory evidence to free a wrongly accused individual. Well, the short answer is I don't think it does say anything about its reliability. And the reason is I don't think the state's attorney, you know, you could count on them to provide them an execution case. Can we count on defense counsel to promptly disclose what might be termed exculpatory evidence? I don't think there was any issue in view of the trial date and the discovery that was produced that there was anything untimely about the production of the statement. Two years, counsel? You don't think an exculpatory statement for a defendant is not something that should have been tendered as soon as you receive it rather than waiting almost two years to tender it? I believe the discovery timeline is in relation to the trial and it was tendered well in advance of the trial. If the Court has no further questions, I'd ask that the Court reverse the defendant's conviction and amend the matter for a new trial. Thank you, counsel. This Court will take this matter under advisement.